**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-02370-TC

---

BENJAMIN E.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[2]

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Benjamin E. claims that he had a disability covered under the Social Security Act. He now seeks review of a decision of the Commissioner of Social Security denying him a Period of Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C.

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g., Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Bisignano is substituted for the former Acting Commissioner, Michelle King, as the defendant. No further action is necessary. *See* 42 U.S.C. §§ 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

§ 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past

relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Citing his coronary artery disease and issues related to his right hip, knees, and right wrist, Plaintiff applied for disability insurance benefits in 2020. Adm. Rec. at 198–99.[3] Plaintiff initially alleged that he became disabled in August 2017. *Id.* He subsequently amended his alleged disability onset to December 2019. *Id.* at 2043.[4]

The Commissioner denied Plaintiff's claim at the initial and reconsideration levels. Adm. Rec. at 71, 95. Plaintiff then appeared before an ALJ in 2022, and the ALJ found him not disabled. *Id.* at 9–25. Plaintiff appealed to the Appeals Council, which denied his request for review. *Id.* at 1–3. Plaintiff appealed that decision to the District of Kansas, but before the court could rule, the Commissioner moved to remand under 42 U.S.C. § 405(g) because the initial ALJ's decision failed to explain an omission from a medical opinion. *Id.* at 2122–29. On remand, a second ALJ held another hearing in 2024, and again found Plaintiff not disabled. *Id.* at 2040–63. Plaintiff now appeals this final decision. *See* 20 C.F.R. § 416.1484.

The ALJ reviewed Plaintiff's disability claim according to the five-step analysis detailed in 20 C.F.R. § 416.920. Adm. Rec. at 2043–56. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his amended alleged onset date of December 9, 2019, through his date last insured of June 30, 2022. Adm. Rec. at 2045. At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease with myocardial infarction status-post stenting, left knee osteoarthritis, right hip degenerative joint

---

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

[4] Plaintiff's date last insured was June 2022. A claimant must prove that they became disabled prior to their date last insured to receive disability insurance benefits. *See* SSR 83-10, 1983 WL 31251, at *8 ("Under Title II, a period of disability cannot begin after a worker's disability insured status has expired."). Thus, the relevant time-period in this case is from December 2019 through June 2022. *See* Adm. Rec. at 2043–44, 2056.

disease, right wrist neuropathy, and obesity. *Id.* at 2046 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment that met or medically matched a listing. *Id.* at 2048–49.

The ALJ next identified Plaintiff's residual functional capacity. Adm. Rec. at 2049–54. After weighing Plaintiff's claims against the opinions offered and the rest of the record, the ALJ found Plaintiff had the RFC to "lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for four hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday" and "frequently handle, finger and feel with the right upper extremity." *Id.* at 2049. The RFC further designated that the Plaintiff "should never climb ladders, ropes and scaffolds, and climb ramps and stairs," nor "work at unprotected heights or with moving mechanical parts." *Id.* The RFC also stated Plaintiff could "occasionally stoop, kneel, crouch, crawl, and balance as defined by the SCO," "occasionally use foot controls with the right lower extremity, and frequently use foot controls with the left lower extremity," and "occasionally work in vibration." *Id.*

The ALJ based those findings on Plaintiff's symptoms and compared them with the medical record, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. Adm. Rec. at 2049. He also considered each medical record in accordance with the requirements of 20 C.F.R. § 404.1520c and explained how the evidence supported his opinions. Adm. Rec. at 2052–53.

At step four, the ALJ determined that Plaintiff could not perform his past relevant work. Adm. Rec. at 2054. Then, at step five, the ALJ relied on vocational experts to find that Plaintiff could perform the requirements of representative occupations such as a mail room clerk, a price marker, or a routing clerk. *Id.* at 2055. Because those positions exist in significant numbers in the national economy, the ALJ concluded that Plaintiff did not have a disability covered under the Act during the relevant period. *Id.* at 2056 (citing 20 C.F.R. § 404.1520(g)).

## II

Plaintiff challenges the ALJ's decision by asserting that the RFC was not supported by the record and that the ALJ erred at step five by relying on flawed vocational evidence. But he has not shown that the ALJ's factual findings lack substantial evidence or that any legal error occurred. Accordingly, the Commissioner's final decision is affirmed.

**A**

Plaintiff claims for two distinct reasons that the "ALJ's RFC [was] unsupported by substantial evidence." Doc. 5 at 7. That claim fails.

**1.** The first of Plaintiff's weight-of-the-evidence arguments asserts that the ALJ's RFC relied on opinions that are substantially flawed or inconsistent with the record. Doc. 5 at 7–14. But each of Plaintiff's arguments in furtherance of that contention either misunderstands the scope of judicial review or requires an impermissible reweighing of the evidence. As a result, Plaintiff's challenge concerning the ALJ's RFC fails on these grounds.

For one, Plaintiff faults the ALJ for relying on medical opinions he deems incomplete or outdated. *See, e.g.*, Doc. 5 at 7–8 (arguing that Dr. Torres failed to address coronary-artery limitations and did not review later records). That argument fails for a couple of reasons. One is because it is unsupported by the record. Dr. Torres specifically mentioned Plaintiff's heart condition in his RFC explanation. Adm. Rec. at 66–67 (mentioning "coronary artery disease" and "recent hospitalization in December 2019 for acute MI 3 stents placed"; "acute coronary syndrome with inferior wall infarction"; "3 stents placed"; and follow up findings relevant to the condition such as "normal EF [ejection fraction]," "no ischemia," and "LDL 56"). But even if the ALJ had not addressed or discounted Dr. Torres's records as Plaintiff suggests, that is inconsequential: A reviewing court's role is not to decide whether each report was perfect; it is to determine whether the ALJ's reliance on the record as a whole was reasonable. *See Biestek,* 587 U.S. at 108 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

An ALJ need not adopt any opinion in full and may instead formulate an RFC by crediting supported portions of imperfect reports. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). That is precisely what the ALJ did here. The ALJ acknowledged inconsistencies among the medical sources, considered newer records, and explained the weight given to each opinion. Adm. Rec. at 2044–54. Even if some opinions were incomplete, that does not undermine the decision so long as the ALJ's findings are supported by substantial evidence and reflect consideration of all relevant medical evidence. *See, e.g., Neal v. Comm'r, SSA*, 782 F. App'x 722, 725 (10th Cir. 2019) (holding that "[e]ven if [source] relied on outdated records" the ALJ reasonably considered the more recent medical evidence). The ALJ buttressed his determinations with all of the relevant evidence and claims that he considered all of Plaintiff's symptoms in formulating the RFC. Adm. Rec.

at 2049. And "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff also challenges several aspects of the ALJ's evaluation of medical evidence. Doc. 5 at 10 (arguing ALJ erred by finding Plaintiff more limited than Dr. Hegde opined); *id.* at 13 (arguing ALJ selectively adopted the opinions of Nurse Denson); *id.* at 13–14 (arguing that ALJ's determination failed to justify finding that Plaintiff had right-wrist neuropathy). None of these amounts to a reversible error. The ALJ was not required to adopt any opinion in full or to explain why he declined to accept the portions of Dr. Hegde's opinion least favorable to Plaintiff. *See Chapo,* 682 F.3d at 1288 ("[W]e are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably [toward the claimant] unless the ALJ provides an explanation for extending the claimant such a benefit."). Nor does the record show improper "picking and choosing": the decision expressly addressed Nurse Denson's statement that Plaintiff needed a cane and explained that it conflicted with contemporaneous examinations showing normal gait and stable ambulation. Adm. Rec. at 2053; *cf. Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). The ALJ supported his finding on Plaintiff's right-wrist neuropathy by citing both Plaintiff's testimony and diagnostic testing. Adm. Rec. at 2050. In short, Plaintiff identifies no portion of the record the ALJ ignored or misapplied. Rather, Plaintiff points to evidence he believes should have been weighed differently. While a different reading of the record could lead to different conclusions, a federal court's role in reviewing is not to reweigh or second-guess the agency's judgment. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

**2.** Plaintiff next argues that the ALJ violated SSA procedures in assessing the RFC, specifically in evaluating the opinions of Dr. Torres, Dr. Hegde, and Nurse Denson. Doc. 5 at 7–14. These arguments lack merit and do not justify reversal.

Plaintiff first argues that the ALJ failed to consider that Dr. Torres neither treated nor examined Plaintiff, as required under 20 C.F.R. §§ 404.1520c(c)(3)(i–v). Doc. 5 at 8. That contention is unsupported. The ALJ stated that he considered all the evidence, and reviewing courts typically "take the ALJ at his word" when he has stated as much. *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted)). While the ALJ did not explicitly discuss the factor, the cited regulation does not require discussion. The rule directs ALJs to

6

consider the medical source's relationship with the claimant, but plainly allows the ALJ to decide whether to explain that factor. 20 C.F.R. § 404.1520c(b)(1)–(2); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that under the prior, but analogous regulation failure to discuss this and other factors does not constitute a reversible error). A written discussion is necessary only when equally supported and consistent opinions conflict and the ALJ must use those factors as a tiebreaker. 20 C.F.R. § 416.920c(b)(3), (c)(3)–(5). The ALJ had no legal obligation to discuss how Dr. Torres's relationship with Plaintiff affected the weight assigned to Dr. Torres's opinion because there was no tiebreaker at play. *Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533, at *6 n.9 (10th Cir. July 6, 2021).

Next, Plaintiff says the ALJ failed to adequately justify rejecting Dr. Hegde's two-hour standing and walking limitations. Doc. 5 at 9. But it is not obvious that the ALJ rejected that limitation, as the ALJ found that the facts Plaintiff "walked with a normal gait, was in no acute distress[,] and ambulated without assistance" undermined Dr. Hegde's two-hour limitation. Adm. Rec. at 2052. Perhaps the discussion could have been more fulsome, but the level of detailed discussion Plaintiff seeks is not required. The ALJ need only articulate consideration of consistency; there is no specified level of detail that must be included. 20 C.F.R. § 404.1520c(b)(2). The ALJ's brief discussion adequately describes the rationale for the decision to permit judicial review. That is all that is required. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979).

Finally, Plaintiff argues that regulations required the ALJ to follow up with Nurse Denson because her opinion was vague and internally inconsistent. Doc. 5 at 11–12. That is not what the regulation requires. Under 20 C.F.R. § 404.1520b(b), an ALJ has the authority but not obligation to follow up with a medical source when the evidence is insufficient to determine whether the claimant is disabled. *Torres v. Kijakazi*, No. CV 20-440 SCY, 2021 WL 4307201, at *7 (D.N.M. Sept. 22, 2021). An ALJ has a duty to follow up with a medical source only if the report is "inadequate or incomplete" under the factors listed in § 404.1519p(a), 20 C.F.R. § 404.1519p(b). Plaintiff does not argue that such a deficiency exists here. Indeed, the law recognizes vague or internally inconsistent reports are not sufficient to create an inadequacy that would require a follow-up. *See Craig P. v. Kijakazi*, 2023 WL 5613800, at *5–6 (D. Utah Aug. 30, 2023); *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016); *Hursh v. Astrue*, 2013 WL 5432356, at *14 (N.D. Okla. Sept. 27, 2013). Denson's report contained enough information to evaluate Plaintiff's impairments. *See, e.g., White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001), *as amended on denial*

*of reh'g* (Apr. 5, 2002) (holding that recontact was not required given that "ALJ believed the information he received from [physician] was 'adequate' for consideration … [and] not so incomplete that it could not be considered.")

**B**

Plaintiff argues that the ALJ did not meet his burden at step five because the ALJ failed to resolve conflicts between the vocational expert's testimony, regulations, and the Dictionary of Occupational Titles ("DOT").[5] Doc. 5 at 14. But the vocational expert's testimony is consistent with controlling authorities. As a result, his step-five challenge fails.

Plaintiff contends that the vocational expert's testimony demands correction. In particular, he claims there is a conflict between Plaintiff's limitations (to walking or standing no more than four hours per day) and the exertional limits of light work (which requires the capacity to stand or walk six hours per day). Doc. 5 at 14–15.

Plaintiff's construction of what light work requires is wrong. The plain language of these authorities makes clear that light work does not require a minimum of six hours of standing or walking; they define light work to include jobs that allow "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." SSR 83-10, 1983 WL 31251, at *5–6; 20 C.F.R. § 404.1567(b). The four-hour standing or walking exertional limitation comfortably fits within this broader definition. *See, e.g., Newburn v. Barnhart*, 62 F. App'x 300, 304 (10th Cir. 2003) (finding no reversible error with four-hour standing/walking limits for a claimant with a light work classification); *Ronald David H. v. Berryhill*, No. 18-2219, 2019 WL 1002048, at *13–14 (D. Kan. Mar. 1, 2019) (affirming ALJ's decision that relied on VE to identify light-work positions with four-hour standing/walking limit); *K.M. v. Comm'r, Soc. Sec. Admin.*, No. 23-00654, 2024 WL 1374956, at *1 (D. Colo. Mar. 31, 2024) (same); *Denning v. Saul*, No. 18-813, 2019 WL 4534023, at *4 (W.D. Okla. Sept. 19, 2019) (same).

Even adopting Plaintiff's narrow reading of light work, it would not follow that the ALJ must ignore the vocational expert's testimony. The vocational expert considered Plaintiff's four-hour limitation and identified light, unskilled positions, such as mail room clerk, price marker, and routing clerk, that exist in significant numbers in the

---

[5] Plaintiff also argued the RFC itself was flawed, meaning the ALJ's question to the vocational expert must have been necessarily flawed, too. Doc. 5 at 14. That argument fails because its premise has been rejected. *See* Part II.A., *supra*.

national economy. Adm. Rec. at 2089–90. The vocational expert also explained that these jobs do not conflict with the DOT given the RFC limitation. Adm. Rec. at 2090. Accordingly, the ALJ complied with 20 C.F.R. § 404.1560(c), which authorizes the use of vocational experts to determine whether a claimant can perform other work in the national economy, and with SSR 83-12, which directs the use of vocational experts when a claimant's RFC does not permit the full range of work at a given exertional level. No reversible error exists here. *See Newburn*, 62 F. App'x 300 at 304 (ALJ satisfied step-five by relying on vocational expert testimony even when claimant cannot perform full range of work).

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: November 19, 2025         \_s/ Toby Crouse\_\_\_\_\_
                                Toby Crouse
                                United States District Judge